Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

FILED
U.S. DISTRICT COURT

2019 FEB 27  A 10: 30

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT

for the

District of Utah

Civil Division

RECEIVED CLERK

FEB 2 5 2019

U.S. DISTRICT COURT

| | |
|---|---|
| Jay Brodsky | ) Case No. _____ |
| | ) *(to be filled in by the Clerk's Office)* |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) Jury Trial: *(check one)* ☑ Yes ☐ No |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) |
| *please write "see attached" in the space and attach an additional* | ) |
| *page with the full list of names.)* | ) |
| -v- | ) Case: 2:19-cv-00127 |
| | ) Assigned To : Parrish, Jill N. |
| Teleperformance USA, Inc. | ) Assign. Date : 2/25/2019 |
| Alliance One Receivables Mgmt. Inc. | ) Description: Brodsky v. |
| Timothy J. Casey | ) Teleperformance USA et al |
| Carol Ezel | ) |
| _____ | ) |
| *Defendant(s)* | ) |
| *(Write the full name of each defendant who is being sued. If the* | ) |
| *names of all the defendants cannot fit in the space above, please* | ) |
| *write "see attached" in the space and attach an additional page* | |
| *with the full list of names.)* | |

## COMPLAINT FOR A CIVIL CASE

I.  **The Parties to This Complaint**

A.  **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | | |
|---|---|---|
| Name | Jay Brodsky | |
| Street Address | 240 East Shore Road, #444 | |
| City and County | Great Neck | Nassau County |
| State and Zip Code | New York | 11023 |
| Telephone Number | 973-568-1666 | |
| E-mail Address | demcointerexport@yahoo.com | |

B.  **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Teleperformance USA, Inc. |
| Job or Title *(if known)* | |
| Street Address | 1991 S. 4650 W |
| City and County | Salt Lake City        Salt Lake County |
| State and Zip Code | Utah               84104 |
| Telephone Number | 801-257-5811 |
| E-mail Address *(if known)* | teleperformance.com |

Defendant No. 2

| | |
|---|---|
| Name | Alliance One, Inc. |
| Job or Title *(if known)* | |
| Street Address | 1160 Centre Pointe Drive, Suite 202 |
| City and County | Mendota Heights        Dakota County |
| State and Zip Code | Minnesota          55120 |
| Telephone Number | (800) 858-4472 |
| E-mail Address *(if known)* | allianceoneinc.com |

Defendant No. 3

| | |
|---|---|
| Name | Carol Ezel |
| Job or Title *(if known)* | Corporate Officer |
| Street Address | 1160 Centre Pointe Drive, Suite 202 |
| City and County | Mendota Heights        Dakota County |
| State and Zip Code | Minnesota          55120 |
| Telephone Number | (800) 858-4472 |
| E-mail Address *(if known)* | allianceoneinc.com |

Defendant No. 4

| | |
|---|---|
| Name | Timothy J. Casey |
| Job or Title *(if known)* | CEO |
| Street Address | 1160 Centre Pointe Drive, Suite 202 |
| City and County | Mendota Heights        Dakota County |
| State and Zip Code | Minnesota          55120 |
| Telephone Number | (800) 858-4472 |
| E-mail Address *(if known)* | allianceoneinc.com |

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

☐ Federal question          ☑ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

   a.    If the plaintiff is an individual

   The plaintiff,  *(name)*  Jay Brodsky                              , is a citizen of the
   State of *(name)*  New York                              .

   b.    If the plaintiff is a corporation

   The plaintiff,  *(name)*                              , is incorporated
   under the laws of the State of *(name)*                              ,
   and has its principal place of business in the State of *(name)*

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

   a.    If the defendant is an individual

   The defendant,  *(name)*                              , is a citizen of
   the State of *(name)*                              . Or is a citizen of
   *(foreign nation)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

b.    If the defendant is a corporation

The defendant, *(name)* Teleperformance USA, Inc. , is incorporated under

the laws of the State of *(name)* , and has its

principal place of business in the State of *(name)* Utah .

Or is incorporated under the laws of *(foreign nation)* France ,

and has its principal place of business in *(name)* Utah .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:
$75,001.00

## III.    Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

See attached addendum

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

see attached addendum

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:          February 15, 2019

Signature of Plaintiff

Printed Name of Plaintiff        Jay Brodsky

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

Jay Brodsky
240 East Shore Road, #444
Great Neck, NY 11023
Telephone: (973) 568-1666
E-mail: demcointerexport@yahoo.com
Plaintiff ProSe on Behalf of Himself                     Case No._____

# UNITED STATE DISTRICT COURT
# DISTRICT OF UTAH

### SUMMONS & COMPLAINT

**THE MATTER OF:**

<u>JAY BRODSKY</u>
**PLAINTIFF**
                                                                    •
                                                                    •
                                         *-against-*                •
                                                                    •
                                                                    •
                                                                    •
                                                                    •
TELEPERFORMANCE USA GROUP                                           •
ALLIANCE ONE RECEIVABLES MANAGEMENT, INC.                           •
DBA ALLIANCE ONE                                                    •
TIMOTHY J. CASEY-PRESIDENT/CEO                                      •
<u>CAROL EZELL-OWNER</u>                                             •
**DEFENDANT'S**                                                     •

### *Issues Before the Court, Amongst others:*

Violation of the Telephone Consumer Protection Act 1991(TCPA)

47 U.S.C.A. § 227 et seq.

Sections 5(a), 5(m)(1)(A), 13(b), and 16(a) of the FTC Act

15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b)

Section 6 of the Telemarketing and Consumer Fraud and Abuse Prevention Act (the

"Telemarketing Act")

15 U.S.C. § 6105

Section 5(a) of the FTC Act, 15 U.S.C. § 45(a)

FTC Telemarketing Sales Rule ("TSR"), as amended, 16 C.F.R. Part 310

## INTRODUCTION

1.   On this 15th day of February, 2019, Jay Brodsky (PLAINTIFF) resides at

     240 East Shore Road, Apartment 444, Great Neck, New York 11023 duly

     deposes that the facts as stated herein are true to the best of his knowledge.

## VENUE AND JURISTICTION:

2.   Venue is appropriate under 28 U.S.C.A. § 1332 because, amongst other

     things: the Plaintiff, Jay Brodsky is permanently domiciled in New York

     State, County of Nassau; TELEPERFORMANCE U.S.A., Inc., a/k/a

     TPUSA, Inc., known hereafter as, "TELEPERFORMANCE;" owns and

     operates an account receivables management company known as,

     "ALLIANCE ONE."  TIMOTHY J. CASEY-President/CEO and CAROL

     EZEL, are corporate officers of, ALLIANCE ONE and are known hereafter

     as, "DOES 1 through 5.  TELEPERFORMANCE U.S.A., INC., and

     ALLIANCE ONE, direct their activities to residents of New York State,

     County of Nassau and to others similarly situated throughout the United

     States, from the TELEPERFORMANCE headquarters located at, 1991 S

     4650 W, Salt Lake City, UT 84104; "ALLIANCE ONE," a Delaware

     corporation number [112324], registered agent, "CT Corporation System,

Inc.," with offices at, 1160 Centre Pointe Drive, Suite 202, Mendota Heights, MN 55120.

3.    The United States District Court for the District of Utah, has jurisdiction over the parties because, "TELEPERFORMANCE" and "DOES 1 through 5," conduct a major part of their national operations from the above enumerated Utah offices, with an advertising budget not exceeded in other jurisdictions throughout the United States.

4.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or originated from the District of Utah.

5.    The Plaintiff brings this putative action against the Defendants to secure redress for their violations of the, Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

6.    The Plaintiff is one of many phone call recipients, believed to number in the thousands, who received illegal telemarketing calls of an unknown nature.

7.    The Plaintiff brings this action to enforce the consumer privacy provisions of the TCPA and achieve redress and compensation for himself as an individual consumer. In a case such as this, where individual damages are set

by statute at $500-$1,500 per violation, the inclusion of punitive damages

are best if not the only means of obtaining redress for the type of wide-scale,

illegal telemarketing practices at issue, and is consistent with the private

right of action afforded to the Plaintiff.

8.    In this case however, the Defendants routinely used an, "Automatic

Telephone Dialing System" (ATDS), that was directed towards the Plaintiff

on numerous occasions by its agents who had intentionally dialed his

cellphone number.

9.    TIMOTHY J. CASEY and CAROL EZEL, as officers of, "ALLIANCE

ONE," are personally liable for the acts alleged in this Complaint pursuant to

47 U.S.C. § 217 of the Telephone Consumer Protection Act, which states;

> *The act, omission, or failure of any officer, agent,*
>
> *or other person acting for or employed by any common*
>
> *carrier or user, acting within the scope of his*
>
> *employment, shall in every case be also deemed to be the*
>
> *act, omission, or failure of such carrier or user as well as*
>
> *of that person, 47 U.S.C. § 217 (emphasis added).*

## THE PARTIES

### PLAINTIFF:

10.   JAY BRODSKY, 240 East Shore Road, Apt. 444, Great Neck, New York

11023;

### DEFENDANTS:

11.   ALLIANCE ONE RECEIVABLE MANAGEMENT, INC. d/b/a,

ALLIANCE ONE, a Delaware Corporation, number [112324], registered

agent, "CT Corporation System, Inc.," with offices at, 1160 Centre Pointe

Drive, Suite 202, Mendota Heights, MN 55120; conducting daily business

operations from, 1160 Centre Pointe Drive, Suite 202, Mendota Heights,

MN 55120;

12.   TELEPERFORMANCE GROUP USA, INC., parent company of,

ALLIANCE ONE, conducting its daily operations from their headquarters

located at, 1991 S 4650 W, Salt Lake City, UT 84104; subsidiary of

TELEPERFORMANCE S.E., 21/25 rue Balzac, Paris, 75008, France;

13.   CAROL EZEL, owner of ALLIANCE ONE, 1160 Centre Pointe Drive,

Suite 202, Mendota Heights, MN 55120;

14.    TIMOTHY J. CASEY, President/CEO, of ALLIANCE ONE, 1160 Centre

       Pointe Drive, Suite 202, Mendota Heights, MN 55120;

15.    At all times material to this complaint, "DOES 1 through 5," are known

       to have controlled in fact, and are Corporate officers of, "ALLIANCE

       ONE," and personally directed the telemarketing practices at issue.

16.    At all times material to this complaint the, "DEFENDANTS," conducted

       their daily business operations from Salt Lake City, Utah, and Mendota

       Heights, MN using the same equipment and same employees, and held

       themselves out to the public under the business name, "ALLIANCE ONE,"

       whose parent company is, "TELEPERFORMANCE U.S.A."

## JURISDICTION AND VENUE

17.    The Court has Federal question jurisdiction over the TCPA claims. Mims v.

       Arrow Fin. Servs., LLC, 132 S. Ct. 740 (2012).

18.    The venue is proper because one or more of the Defendants conduct

       business from their offices at, Salt Lake City, Utah, and because ALLIANCE

       ONE, is a registered, Delaware Corporation number, [14605-112], having a

       registered office located at, 361 San Francisco Street, 4th Floor, San Juan,

PR 00901, thereby satisfying this Court's jurisdictional requirements

pursuant to 28 U.S.C.A. § 1332.

## THE TELEPHONE CONSUMER PROTECTION ACT

19.   In 1991, Congress enacted the, "TCPA" to regulate the explosive growth of

the telemarketing industry which today is believed to have put forth nearly,

SIXTY BILLION (60,000,000,000) illegal telemarketing and debt collection

calls (according to [F]TC statistics) to consumers over the past few years.

That number however is expected to grow exponentially if more isn't done

to stop the offenders from continuing to make these calls.  In so doing,

Congress recognized that "unrestricted telemarketing calls . . . can be an

intrusive invasion of privacy with 5-10% of those illegal calls resulting in

recipients of these calls being defrauded out of, Thousands of Dollars each

thereby making these calls costly and dangerous to the well being of mostly

senior citizens who are more vulnerable to these types of calls than other

sectors of the population.  The, "Telephone Consumer Protection Act of

1991," Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. §

227 (TCPA). The TCPA amended Title II of the Communications Act of

1934, 47 U.S.C. § 201 et seq.

20.   The TCPA's most severe restrictions address telemarketing calls put forth to

      residential and cellular telephone lines. In enacting the statute, Congress

      stated that banning these calls is "the only effective means of protecting

      telephone consumers from this nuisance and privacy invasion." Id. § 2(10)

      and (12); see also Mims, 132 S. Ct. at 745.

21.   Accordingly, the TCPA prohibits individuals and companies from initiating

      telemarketing calls to residential telephone lines and cellphones using a

      prerecorded voice messaging or by implementing use of an, "Automatic

      Telephone Dialing System," commonly referred to as, "ATDS," to call and

      deliver messages without the prior express consent of the called party

      pursuant to, 47 U.S.C. §  227(b).

      ......................................................................................................
      By **TRACEY KAPLAN** | tkaplan@bayareanewsgroup.com | Bay Area News Group
      PUBLISHED: July 8, 2018 at 9:00 am | UPDATED: July 10, 2018 at 5:25 am

      They boldly prey on the elderly and other vulnerable groups like immigrants and
      small businesses by impersonating a variety of agencies, from the IRS to
      student-loan collectors. In the latest shakedown, immigrants in New York City
      reported being swindled out of millions of dollars by Mandarin-speaking
      scammers pretending to be from the Chinese consulate and demanding money
      to protect victims' U.S. legal status.
      ......................................................................................................

22.   For autodialed telemarketing calls made to cellular cellphones and landlines

      prior to October 16, 2013, the telemarketer must show they had a

consumer's prior expressed written consent to call via pre-recorded or autodialed messages.

23.   For autodialed telemarketing calls directed towards consumers cellular telephones and landlines on or after October 16, 2013, the telemarketer must show they had prior expressed written consent (a) bearing the signature of the person who is being dialed and thereby providing consent; (b) written consent must specify the telephone number to which the person consenting is to be called; (c) it must show clearly that it authorizes the company to call the person being dialed using an autodialer or prerecorded message for telemarketing purposes; and (d) providing consent is not contingent on purchasing goods or services. See In re Rules & Regs.

**IMPLEMENTING THE TCPA, 27 FCC Rcd 1830, 1844 ¶ 33 (2012).**

24.   For calls dialed on or after October 16, 2013, having an established business relationship exemption is no longer applicable.

25.   On May 9, 2013, the [F]CC released a Declaratory Ruling holding that a, Corporation, or other entity that contracts out its telephone marketing or telephone collections, "May be held vicariously liable under federal

common law principles of agency for violations of . . . section 227(b) . . .

that are committed by third-party telemarketers or debt collectors."

26.     More specifically, the [F]CC, 2013 Ruling held that, even in the absence of

evidence of a formal contractual relationship between a business and

the telemarketer, the business is liable for telemarketing calls if the

telemarketer "has apparent (if not actual) authority" to make the calls on

behalf of the business. [F]CC, 2013 Ruling, 28 [F]CC Rcd at 6586 ¶ 34.

27.     The [F]CC has rejected a narrow view of TCPA liability, including the

assertion that engendering business liability requires a finding of formal

agency and immediate direction and control over the third-party who placed

the telemarketing call on their behalf.

28.     Under the TCPA, a seller of a product or service may vicariously be liable

for a third-party telemarketer's violations of, Section 227(b), even if the

seller did not physically dial the illegal call, and even if the seller did not

directly control the actions of the telemarketer who did.

29.     A business is liable under, Section 227(b) when it has authorized a

telemarketer to market its goods or services or collect a debt on their behalf.

30.    Additionally, a business may vicariously be liable for a Section 227(b)

violation under principles of apparent authority and ratification.

---

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling
Concerning the TCPA Rules, CG Docket No. 11-50, 28 FCC Rcd 6574, 6574 ¶ 1
(2013) ("FCC 2013 Ruling").*

---

31.    The [F]CC 2013 Ruling further clarifies the circumstances under which a

telemarketer has apparent authority:

> Apparent authority may be supported by evidence when a
> business allows an outside sales entity to access
> information and systems that normally would be held
> within the businesses exclusive control, including: access
> to detailed information regarding the nature and pricing
> of the businesses products and services or to the
> businesses customer information. The ability by which an
> outside telemarketer can access consumer information
> from a businesses sales or customer systems, as well as
> having the authority to implement the use of a businesses
> trade name, trademark and service mark may also be
> relevant. It may also be persuasive if the business
> approves, writes or reviews the outside entity's
> telemarketing or collection scripts. Finally, a business
> would be responsible under the TCPA for the
> unauthorized conduct of a third-party telemarketer that is
> otherwise authorized to telemarket on the businesses

> behalf if the business knew (or reasonably should have
> known) that the telemarketer was violating the TCPA on
> the businesses behalf and the business failed to take
> effective steps within its power to force the telemarketer
> to cease from implementing their illegal conduct.
>
> .........................................................................

32.   The [F]CC, 2013 Ruling, further held that, even in the absence of evidence

of a formal contractual relationship between a business and a telemarketer,

the business is liable for telemarketing calls if the telemarketer "has apparent

(if not actual) authority" to make the calls.

33.   "DOES 1 through 5," are personally liable for the acts alleged in this

Complaint pursuant to 47 U.S.C. § 217 of the Telephone Consumer

Protection Act, which reads, *inter alia:*

> *"The act, omission, or failure of any officer, agent,*
> *or other person acting for or employed by any common*
> *carrier or user, acting within the scope of his*
> *employment, shall in every case be also deemed to be the*
> *act, omission, or failure of such carrier or user as well as*
> *of that person." 47 U.S.C. § 217 (emphasis added).*

## FACTS & STANDING

The Illegal Telemarketing Campaign at Issue

34.    At all times relevant to this Complaint, DOES 1 through 5, authorized, "ALLIANCE ONE," to call prospective customers on their behalf and by specifically using their trade names.

35.    The trademarks and trade-names of the DEFENDANTS are widely known due to an extravagant internet and telemarketing campaign.

36.    "THE DEFENDANTS," contacted the plaintiff via telephone on numerous occasions over the last year in an attempt to <u>collect an unknown debt originating from an unknown source</u>. The Plaintiff stated emphatically on each and every occasion that the phone numbers, ALLIANCE ONE had dialed, **(973) 568-1666** or **(973) 568-3424** (phone numbers that have belonged to the Plaintiff for more than ten (10) years) are not associated with the, John or Jane Doe's, ALLIANCE ONE was attempting to collect a debt from.

37.    During those numerous phone calls "THE DEFENDANTS" or agent's purporting to represent the interests of, "ALLIANCE ONE," had been informed that the Plaintiff is not the person they are looking for?  However,

those efforts by the Plaintiff to stop THE DEFENDANTS from calling him repeatedly fell on deaf ears.

38.     The <u>caller ID associated with the ALLIANCE ONE, amongst others was,</u> **<u>800-685-5492</u>**. On each occasion the agent calling the Plaintiff was informed that the John or Jane Doe they were attempting to contact is not associated with the telephone number they had dialed. When the Plaintiff contacted ALLIANCE ONE to address the issue, he demanded to have his name and number removed from the ALLIANCE ONE call list? Surprisingly, he was then informed that the process he needed to follow was to wait for the next erroneous call to be received, in order to speak directly to an agent about removing his name and number from ALLIANCE ONE's call list. He followed the instructions but the calls continued to occur.

39.     "The DEFENDANTS," apparently gain access to names and private information of perspective call recipients from unknown third parties, in order to tailor their telemarketing efforts to the consumers being called.

40.     At all times relevant to this lawsuit, the DEFENDANTS, had the ability to supervise, monitor, and control the conduct of their agents, but instead

consciously turned a "blind eye" to their illegal conduct, while

simultaneously accepting the benefits of those illegal acts.

41.   At all times relevant to this lawsuit, the DEFENDANTS had the authority to

issue a "CEASE & DESIST," order to its agents and subsidiaries thereby

revoking their ability to harass the Plaintiff using, the DEFENDANTS

widely recognized name.

42.   At all times relevant to this lawsuit, all of the DEFENDANTS had the

authority to issue a "CEASE & DESIST," order to its agents thereby

revoking their authority to harass the Plaintiff on, "ALLIANCE ONE's"

behalf.

43.   At no time did any of the DEFENDANTS issue such a "CEASE &

DESIST," order to their agents or subsidiaries.

44.   At all times relevant to this lawsuit, the DEFENDANTS allowed their

appointed agents and subsidiaries to telemarket using trade names and

trademarks belonging to, "ALLIANCE ONE," when calling the Plaintiff.

45.   By allowing, "The DEFENDANTS," their telemarketers and their

subsidiaries to tele-market, using the, "ALLIANCE ONE," trade name, and

by allowing, telemarketers to use their trademarks, the DEFENDANTS

purposely led consumers to believe that their agents and subsidiaries had the

authority to act on the "ALLIANCE ONE's," behalf.

46.   "ALLIANCE ONE," and their subsidiaries, even provided their agents

permission to invoke, "THE DEFENDANTS," website thereby, affirming to

perspective call recipients and to the public that, "ALLIANCE ONE" and

their agents were, in fact, legitimately associated with the telemarketers,

thereby implying they are, "[P]artners."

## **THE MASSIVE SCOPE OF ILLEGAL TELEMARKETING AT ISSUE**

47.   The scope of the illegal telemarketing practices at issue in this case are

confirmed by records contained with the Federal Trade Commission's

Do Not Call Registry Database and by past class action litigations

addressing these same issues:

***Jay Brodsky registration information FTC Do-Not-Call Directory:***

*(a)   Thank you for registering your phone number with the National*

*Do Not Call Registry. You successfully registered your phone number*

*ending in **3424** on **October 08, 2017**. Most telemarketers will be*

*required to stop calling you 31 days from your registration date.*

*(b)      Thank you for registering your phone number with the National*

*Do Not Call Registry. You successfully registered your phone number*

*ending in **1666** on **October 08, 2017**. Most telemarketers will be*

*required to stop calling you 31 days from your registration date.*

48.     The Plaintiff provided [NO] "Prior Express Consent" to receive autodialed

and/or Pre-Recorded telemarketing calls to collect an erroneous debt

allegedly associated with a still unknown third party.

49.     The scope of, "THE DEFENDANTS," illegal telemarketing campaign at

issue has also been evidenced by records of consumer complaints obtained

in response to Freedom of Information Act requests. Past cases include:

(a) **Christina M. Adams, et al. V. AllianceOne Receivables Management,**

**Inc.,** Case No. 8-cv-0248 JAH WVG, U.S. District Court, Southern

District of California;

(b) **Capital One Telephone Consumer Protection Act Litigation,** Case

No. 1:12-cv-10064, in the U.S. District Court for the Northern District of

Illinois;

**(c)Jesse Rodriguez v. AllianceOne Receivables Management Inc.,** Case

No. 2:15-cv-01224-RAJ, in the U.S. District Court for the Western District

of Washington at Seattle.

50.   **Better Business Bureau complaints about Alliance One**:

(a) **12/05/2018:**  First I received mail from Alliance One in which it stated I
owed 307.14. I was making monthly payments to another place and didn't
realize that the other company Client Services Inc sold it over to them.
Second, I am getting repeated harassing phone calls from this company.

(b)  **09/29/2017:**  Alliance one has been contacting me by phone and mail
day and night and harassing me. I have told them to stop but they continue to
harass me by phone as late as 10pm and as early as 7am. I know they are
violating the law and want them to stop. I have been told that if i do not pay
them they will come to my residence and collect my belongings. Also they
claim they will cancel my driver's license and ruin my credit. They are using
illegal collection methods and they should be fined. Cease and desist.

51.   In June of 2016, the United States District Court for the Northern District of

West Virginia under the "TCPA" denied a motion to dismiss filed by "Got

Warranty Inc." as well as co-defendants N.C.W.C. and Palmer

Administrative Services.  The defendants filed a motion to dismiss the

"TCPA" class action on the ground that the plaintiff's did not suffer concrete

harm by receiving telephone calls from the defendants who implemented the

use of an "Automatic Telephone Dialing System" (ATDS) to the plaintiffs

cellular telephones. The court relied on *Spokeo v. Robbins*, found to the contrary, expressly holding that, "unwanted phone calls cause concrete harm". The court also found "intangible harm" caused by telephone calls that violate "TCPA," such as "invasion of privacy," wasting a consumers time or causing risk of injury due to interruption of concentration while driving. In addition the drainage of a cellphone battery and the cost for electricity to charge the battery is concrete material harm. Therefore, a claim of this magnitude deserves to be heard in court.

52.   A formal request to the Federal Trade Commission has been put forth by the Plaintiff for telephone records and complaint records pertaining to present and past inquiries by consumers against, "ALLIANCE ONE," for the violation of "TCPA".

## **THE LEGAL BASIS OF THE CLAIMS**

53.   The Plaintiff's claim arises pursuant to the provisions of the TCPA, a Federal Statute enacted to prohibit unreasonable invasions of privacy via certain telemarketing practices.

54.   There are questions of law and fact common to Plaintiff's, including but not limited to the following:

Case No.                      Brodsky v. Alliance One                      Page 20 of 24

(a.)    Whether the DEFENDANTS violated the TCPA
by engaging in the act of promulgating unsolicited
prerecorded or autodialed telemarketing/debt collection
calls to residential and cell telephone lines?

(b.)    Whether "THE DEFENDANTS" and their
associates illegally collect debts from consumers
throughout the United States for third party vendors who
employed the "ALLIANCE ONE," to do so?

(c.)    Whether the aforementioned unsolicited ATDS
debt collection phone calls autodialed by the agents of,
"THE DEFENDANTS," were made on behalf of,
"ALLIANCE ONE?"

(d.)    Whether the Plaintiff is entitled to statutory and
punitive damages as a result of the Defendants' illegal
actions?

(e.)    Whether an agency relationship existed between,
"ALLIANCE ONE" and the "DOES 1 through 5?"

(f.)    Whether the "ALLIANCE ONE," Defendants had

the ability to control the collection practices of their

agents and subsidiaries?

(g.) Whether the, "ALLIANCE ONE," Defendants

provided their agents with their apparent authority to

collect debts on their behalf?

and

(h.) Whether the Defendants ratified, "ALLIANCE

ONE's," alleged illegal acts?

## CAUSES OF ACTION
## COUNT I – VIOLATION OF THE TCPA: 47 U.S.C. § 227(b):
## PRE-RECORDED MESSAGES

55.    The Plaintiff re-alleges and incorporates the foregoing allegations contained

in, 1 through 54, as set forth fully in this Complaint.

56.    The TCPA makes it unlawful to initiate any telephone call, to any residential

or cell phone telephone line, using an ATDS, artificial or prerecorded voice

or to deliver any debt collection, message, advertisement or solicitation of

any kind without prior expressed written consent of the called party being

dialed.

57.  The Plaintiff alleges that the DEFENDANTS jointly engaged in an illegal
     telemarketing scheme, thereby violating of the provisions set forth within the
     TCPA's prohibition against telemarketing using an ATDS.

58.  The Plaintiff alleges that such violations of the TCPA were both willful and
     negligent.

59.  As a result of the Defendants willful actions, the Plaintiff is thereby
     entitled to having his rights, status, and legal relations relating to the
     DEFENDANTS' use of tele-marketing using an ATDS determined under the
     TCPA through these actions.

## COUNT II -- INJUNCTIVE RELIEF TO BAR FUTURE TCPA VIOLATIONS

60.  The Plaintiff re-alleges and incorporates the foregoing allegations as set
     forth within, 1 through 59, of this Complaint.

61.  The TCPA expressly authorizes the Court to issue injunctive relief against
     the DEFENDANTS to prevent further violations of the TCPA from being
     inflicted against the Plaintiff.

62.  The Plaintiff, respectfully petitions the Court to order the DEFENDANTS,
     including but not limited to their employees, agents, or other affiliates of
     both, "ALLIANCE ONE," and "TELEPERFORMANCE," to immediately

Case No.                          Brodsky v. Alliance One                          Page 23 of 24

CEASE & DESIST, from engaging in any further unsolicited tele-marketing

telephone calls from being directed towards the Plaintiff and others similarly

situated thereby preventing further violations of the, TCPA.

63.   WHEREFORE, the Plaintiff, respectfully requests the Court to enter a

judgment for each count in his favor, thereby providing the following  relief:

      (a)   As to Count I, statutory damages of $500 per

           violation, or up to $1,500 per violation if proven to

           be willful; and punitive damages as the Court see's

           fit;

      (b)   As to Count II, a permanent injunction prohibiting

           the Defendants, including but not limited to, their

           employees, agents, or other affiliates, to

           immediately CEASE from engaging in any further

           erroneous debt collection calls to the Plaintiff in

           violation of the TCPA;

      (c)    Any other punitive relief the Court finds just and

           proper;

## **JURY DEMAND**

The Plaintiff demands a trial by jury in conjunction with the Constitution, of all claims set forth by the Plaintiff that are in front of this Court.


Dated: February 15, 2019 at Great Neck, New York


_____

Jay Brodsky, on behalf of himself, ProSe